## MANN *vs.* MARSTON.

If the return of the Selectmen of the laying out of a road, describe it as "a town road," it will be sufficient, though it do not state *for whose benefit* it was laid out.

Where the return was of a road laid out over a rangeway, describing it particularly, and the vote of the town was "to accept the report of the Selectmen laying out *the rangeway* near J. M's," &c; the latter was held to be virtually an "approval and allowance" *of the road* as located.

A vote of the town prior to the laying out of a road by the Selectmen, that the owners of the land over which the location of the road was contemplated might permit their fences to remain for one year, could have no legal operation whatever.

The 25th *sec.* of *stat. ch.* 118, providing for the removal of obstructions from certain ways by the order of some Justice of the Peace, relates exclusively to *private* ways, those which are laid out for the benefit of individuals only — but a nuisance in a *town road* or public highway, may be removed by any one whose passage is obstructed by it.

THIS was an action of trespass originally commenced before a Justice of the Peace, carried to the Court of Common Pleas by appeal, and brought into this Court by writ of error. The trespass alleged, was the throwing down the plaintiff's fence. The defendant justified on the ground that the fence was extended across a town road, and that it was removed to enable him to exercise his legal right of passing thereon.

On trial, the plaintiff offered evidence to show that the fence thrown down stood on one of the rangeways of the town of *North Yarmouth*, and had been kept up in that place by him for more than twenty-seven years.

The defendant, to maintain the issue on his part, read in evidence from the records of the town of *North Yarmouth*, the return of

the Selectmen locating the road in question, as a "*town road*," dated *August* 27*th*, 1832 ; and the acceptance thereof by the town, at a meeting regularly called for that purpose, *October* 8*th*, 1832.

The plaintiff also read from the records a request of *Thomas Marston* and others, to the Selectmen, to lay out the road in question, dated *May* 4*th*, 1832 — and a vote of the town, at a meeting held the 28*th* of *May*, 1832, directing the opening of the road as prayed for by *Marston* and others, " before the closing up of the present season, and that *the fences stand as they now stand for twelve months.*"

The defendant proved that in *October*, 1832, a part of said road was built under the direction of the Selectmen, and that the fence thrown down was upon, and across, that portion of the road.

He also proved by one of the Selectmen, that he requested the petitioners to notify the owner of the land and others interested in the location of the road, of the time when the Selectmen would meet to lay it out ; and that some of the owners were present ; but that, he did not recollect that *Henry Scott*, whose fence inclosed some of the land over which the way was located, was present — that, he had no knowledge that *Scott* had been notified, but presumed he had been, inasmuch as he had requested the petitioners to notify all who were interested. There were other circumstances in evidence tending to establish the presumption, that, all who were interested in the location, had due notice of it.

It was also in evidence, that in obedience to instructions from the the town to that effect, it was not the practice of the Selectmen to lay out a way until application had been made therefor, and some directions given by the town in regard to it.

The counsel for the plaintiff hereupon contended, that, the return of the Selectmen ought to have stated that the road was laid out for the use of the town of *North Yarmouth*, or " for the use of certain individuals thereof or proprietors therein" — and that this omission made the proceedings void.

That there should be *positive proof* that notice had been given by the Selectmen to all the owners of land over which the way was to be located — and that the jury should be instructed that the

presumptive evidence, arising from the fact that the Selectmen had requested the petitioners to give notice, was not sufficient to prove that notice had actually been given to *Henry Scott,* one of the owners of the land.

He further contended, that the vote of the town accepting the report of the Selectmen, was not such an approval and allowance of the road as the law required. But if the road was legally laid out and accepted, the defendant had no right to remove the fence, but that his remedy should have been sought by an application to a Justice of the Peace.

He further insisted, that the vote of the town, passed *May 28th,* 1832, was intended to authorize and did authorize the plaintiff to keep up the fence until the 28*th* of *May,* 1833.

But *Ruggles J.,* before whom the cause was tried, ruled that the return of the Selectmen of their doings in laying out the road was good and sufficient : — that, the vote of acceptance by the town, on the 8*th* of *October,* 1832, was equivalent to an approval and allowance of the road : — that, the vote of the town, passed on the 28*th* of *May,* 1832, did not authorize the plaintiff to keep up his fence after the laying out of the road, but was virtually repealed by the subsequent vote of acceptance on the 8*th* of *October* — and that the defendant had a right by law to throw down and remove the fence erected across the road. He also instructed the jury, substantially, that the request of the Selectmen for the petitioners to notify the owners of the land, was not of itself sufficient to raise the presumption of notice having been actually given to *Scott* — but, that if they were satisfied that notice had been given to the owners of the land, before the laying out of the road by the Selectmen, of the time and place of meeting for that purpose, they should find for the defendant — which they accordingly did.

The errors assigned, were predicated upon the foregoing positions of the plaintiff's counsel, and the ruling of the Court thereon.

And now, *Eastman,* for the plaintiff, contended, that it should have appeared in the return of the Selectmen for whose benefit the road was laid out, in order to enable the owner of the land to know of whom to seek his remedy. If for public benefit, of the town. If for the benefit of individuals, then of such individ-

uals. He must seek his remedy within a year — it is therefore important that he should know early, to whom he should look.

2. The evidence of notice was insufficient. A notice to part, cannot be considered as notice to the whole. In this case there was no positive proof of actual notice to any of the owners of land. And there was nothing on which to found a presumption. *Harlow* v. *Pike*, 3 *Greenl.* 438; *Inhbts. of Lancaster* v. *Pope & al.* 1 *Mass.* 88; *Commonwealth* v. *Coombs*, 2 *Mass.* 489; *Howard* v. *Hutchinson*, 1 *Fairf.* 335.

3. The vote of acceptance was not sufficient. It was not a vote accepting the report of the laying out of a *road*, but of the laying out of a *range way*, which the Selectmen had no authority to do.

4. The vote of the town of the 28*th* of *May*, fully justified the plaintiff in continuing up his fence. See *Stat. ch.* 118, *sec.* 25.

5. The defendant had no right to remove the fence, but should have applied to a Justice of the Peace. *Stat. ch.* 118, *sec.* 25, 26, 27. When a nuisance is erected on a public highway, any one may remove it; but when erected on a private way, it must be removed by public authority.

*Mitchell,* for the defendant.

The opinion of the Court, was delivered by

PARRIS J. — As to the first error assigned, we think it is sufficiently apparent from the records of the town, that the Selectmen laid out a *town* way. In their report to the town, dated *Aug.* 27, 1832, they certify that they have surveyed and laid out the rangeway as a *town road* beginning at the range line opposite *Benaiah Titcomb, Jr's.* house and thence proceeding to the *Hallowell* road, describing said road by them so laid out by courses, metes and bounds. Nothing is said in any of the proceedings concerning a private way. The Selectmen certify that the road passes by the side of *Mann's* land sixty-six rods, through his land forty-four rods, and through his inclosure seventy-four rods, but that no damage was claimed. In the absence of all intimations to the contrary, we think the road is to be considered a town road, laid out and accepted for general benefit, and, consequently, that the first error is not well assigned.

Mann *v.* Marston.

The second error assigned is, " That the Court instructed the jury, that from the fact that the Selectmen had directed the petitioners to notify the owners or occupants of the land, of the time and place of their meeting to lay out said road, in connexion with the fact that some of said owners and occupants were present at the time of their meeting for that purpose, the jury might legally presume that due notice had been given to all the owners and occupants of the land over which said road was laid out, of the time and place of said Selectmen's meeting for that purpose, whereas, by law, said court ought to have instructed the jury, that, upon proof of these facts alone, they were not authorized to presume that notice had been given," &c.

The case shows that the Judge, so far from instructing the jury as is alleged in the assignment of errors, did in substance, give the instructions which the plaintiff in error contends ought to have been given.

The Judge certifies that the jury were substantially instructed, that the request of the Selectmen to the petitioners, to give the notice, was not of itself sufficient to raise the presumption of notice, and that there were other circumstances in evidence, tending to establish the presumption, that all persons interested in the land over which the road was laid out, had due notice of the time of the Selectmen's meeting for that purpose ; and that, upon this point, the jury were instructed, that if they were satisfied that notice had been given to the owners of the land, before the laying out of the road by the Selectmen, of the time and place of meeting for that purpose, they should find for the defendant. In finding for the defendant, the jury must have found that all persons interested were duly notified, and nothing appears in the case, tending to shew that they found this fact from incompetent or insufficient evidence. We are, therefore, of opinion that the second error is not well assigned.

The third error assigned is, that the Court of Common Pleas ruled and determined, that the vote of the town to " accept the report of the Selectmen, laying out the rangeway near *James Mann's,*" was such an approval and allowance of the road, as is required by law. In order to understand this vote of the town, it is necessary to recur to the report of the Selectmen and ascer-

tain what they did.  If they merely laid out a rangeway, their act, in so doing, would be wholly inoperative, as the statute gives them no power so to do.  Their power is confined to laying out roads or highways, and a rangeway is not a proper description either of a town road or public highway.  But, by looking at their report, whatever of obscurity may appear in the record of the town, is fully explained.  They laid out a town road on a range-way, as was done in *Howard* v. *Hutchinson*, 1 *Fairf.* 335.  In their report to the town, they say, that they laid out the rangeway as a town road, and go on to describe the course, bounds, length and breadth of the road, with all necessary particularity ; and this report was accepted in regular town meeting, called for that purpose.

We think that this action of the town was virtually an approval and allowance of the road as laid out, and it thereupon was legally established as a town way.  We, therefore, adjudge that the third error is not well assigned.

As to the fourth error, we think with the Court below, that the unconditional acceptance, allowance and approval of the road on the 8*th* of *October*, established it as an open road from that time.  Indeed we do not perceive how the votes of the town, passed on the 28*th* of *May*, long before any action by the Selectmen, could have any legal operation.  Towns have no authority, by statute, to lay out roads except by their Selectmen, and the authority and duty of the town commences when the Selectmen report their doings thereto, and not before.  Consequently, whatever the town may do in relation to a road, before receiving the Selectmen's report, would be legally inoperative.  We have already decided, that even the warrant for calling a meeting to consider the Selectmen's report cannot be legally issued until after the laying out by the Selectmen.  *Howard* v. *Hutchinson*, before cited.  The votes of the 28*th* of *May* may be considered as advisory to the Selectmen, and as indicative of the willingness of the town at that time that the road should remain unopened for the term of one year ; but it has not been contended that the first vote, "that the road, as prayed for by *Thomas Marston* and others, be opened, as requested by said *Marston* and others," has any validity.  That vote did not establish the road, nor has it any

operation or effect, because the Selectmen had not, at that time, laid out the road and reported their doings to the town. Neither can the other vote, passed at the same time, have any greater validity. It was upon a subject not then regularly before the town, but upon which, when regularly presented, on the 8*th* of *October*, the town might have legally acted, but did not. We, therefore, consider the road as regularly laid out and established on the 8*th* of *October*, as an open road, and that the fourth error is not well assigned.

If this was a town road, as it undoubtedly was, then it was not necessary for the defendant to wait until an order could be procured from a Justice of the Peace for the removal of the obstruction.

The 25th *sec.* of *stat. ch.* 118, upon which the plaintiff relies, relates exclusively to *private ways*, and provides that obstructions across such ways may be removed by the order of some Justice of the Peace. This we think must refer to such ways as are laid out for the benefit of individuals only, and not to such public roads as may by their use become highways and great thoroughfares through a town. Surely it cannot be necessary for a traveller, who finds a town way hedged up by impassable obstructions, to resort to a Justice of the Peace for authority to remove such obstruction whereby he may be enabled to proceed on his journey. Town roads are, in many cases, the most public highways in the State. Suppose an individual should throw a fence across one of the principal streets in the city of *Portland*, which streets are laid out by the authority of the city only; — would it be contended that whoever should remove such fence would be a trespasser, unless he did it under authority from a Justice of the Peace? Such a principle would not be endured for a moment. Although the road under consideration may not be of so general importance, yet the case shews that it opened into the county road called the *Hallowell* road, and is very far from being what is denominated in the 25*th section*, a *private* way.

Upon the whole, we think there is no error in the proceedings of the court below, and accordingly the judgment of that court is affirmed.